UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD THOMAS DOHERTY,
     Plaintiff,


     v.                              CIVIL ACTION NO.
                                     12-10125-MBB

PATRICK DONAHOE,
     Postmaster General,
     Defendant.


**MEMORANDUM AND ORDER RE:**
**DEFENDANT PATRICK DONAHOE'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 25)**

**December 5, 2013**


**BOWLER, U.S.M.J.**

Pending before this court is a motion for summary judgment filed by defendant Patrick Donahoe, Postmaster General of the United States Postal Service ("defendant"). (Docket Entry # 25). Plaintiff Edward Thomas Doherty ("plaintiff"), proceeding pro se, opposes summary judgment. After conducting a hearing on May 22, 2013, this court took the motion for summary judgment (Docket Entry # 25) under advisement.

PROCEDURAL BACKGROUND

This dispute arises out of plaintiff's failure of an initial road test ("804 driving test") on September 30, 2010, in

connection with his application for a transitional letter carrier position with the United States Postal Service ("the Postal Service").  The complaint sets out a retaliation claim in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16 ("Title VII").  (Docket Entry # 1, p. 4).  Charitably reading the pro se complaint, plaintiff bases the retaliation on his conversation with Andrea DeSilva ("DeSilva") in October 2008 and his previous complaint for age discrimination with the Equal Employment Opportunity Commission ("EEOC") filed in January 2009.

Defendant seeks summary judgment because plaintiff fails to establish a prima facie case of retaliation.  (Docket Entry # 26, p. 1).  Defendant additionally argues that even if plaintiff was engaged in protected Equal Employment Opportunity ("EEO") activities, he cannot prove that defendant's failure to hire him was due to this protected activity because there was a legitimate, non-retaliatory reason for finding plaintiff ineligible for employment.

At the May 22, 2013 hearing, plaintiff argued that defendant only considered one specific incident regarding the retaliation claim when in fact plaintiff was retaliated against for numerous protected activities.[1]  Plaintiff also contests that

---

[1]  He did not elaborate the activities at the hearing.

defendant had a legitimate non-retaliatory reason for marking him ineligible on the 804 driving test.

## STANDARD OF REVIEW

As the moving party, defendant must show that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Id.

Facts are viewed in the light most favorable of the non-moving party, i.e., plaintiff. Noonan v. Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009). "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is not significantly probative, summary judgment may be granted." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007) (internal quotation marks, citation and ellipses omitted); accord Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (if moving party makes preliminary showing, nonmoving party must

"produce specific facts, in suitable evidentiary form, to establish the presence of a trial worthy issue" with respect to each element on which he "would bear the burden of proof at trial") (internal quotation marks and citations omitted). Affidavits prepared for the EEOC may be considered part of the summary judgment record as long the facts "would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)4; see also Martin v. Maselle & Assoc., Inc., 2007 WL 1975118, at *3 (S.D.Miss. July 2, 2007) (finding that EEOC affidavits constitute affidavits under Fed.R.Civ.P. 56(e) as long as the facts set forth are admissible in evidence). Unsupported allegations in a pleading or conclusory allegations are insufficient to set forth specific facts and establish a trialworthy issue. Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir. 2013); accord Medina-Munoz v. R.J. Reynolds Tobacco Co., 869 F.2d 5, 8 (1st Cir. 1990).

Ordinarily, statements in a complaint are not part of the summary judgment record. In the event a complaint is verified, however, it is appropriate to consider factual averments based on personal knowledge therein as the equivalent of an affidavit for purposes of summary judgment. Sheinkopf v. Stone, 927 F.2d 1259, 1262-63 (1st Cir. 1991). In addition, under 28 U.S.C. § 1746 ("section 1746") "an unsworn statement signed under penalty

of perjury may be used, in lieu of a sworn statement or
affidavit, to support or oppose a motion for summary judgment."
Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit
International, Inc., 982 F.2d 686, 689-90 (1st Cir. 1993).  Here,
the complaint is signed and sworn under "penalty of perjury."
(Docket Entry # 1).  As such, facts based on personal knowledge
in the complaint are properly part of the summary judgment
record.  See Id.; United States v. Gomez-Vigil, 929 F.2d 254,
258 (6th Cir. 1991) (section 1746 "allows use of 'unsworn
declaration under pain and penalty of perjury' in lieu of sworn
oaths"); Uncle Henry's, Inc. v. Plaut Consulting, Inc., 240
F.Supp.2d 63, 69 (D.Me. 2003) ("[a]ffidavits need not be
notarized to be cognizable on summary judgment so long as they
are made under penalties of perjury in accordance with 28 U.S.C.
§ 1746").  This remains true even though plaintiff did not
submit the statements in the complaint as part of his opposition
to the summary judgment motion.  See Carmona v. Toledo, 215 F.3d
124, 132 n.7 (1st Cir. 2000) ("even though Carmona's affidavit
was submitted to support a different motion, we take her sworn
assertions as true in evaluating the summary judgment record").

    Finally, defendant submits a statement of material facts
with citations to the record in accordance with LR. 56.1.
(Docket Entry # 26, pp. 2-5).  In order to contest these facts,
plaintiff must set out a statement of the material facts in the

record which he contends are disputed "with references to affidavits, depositions or other documentation." LR. 56.1. Uncontroverted statements of fact in defendant's LR. 56.1 statement comprise part of the summary judgment record. LR. 56.1; Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted the undisputed material facts that the plaintiff failed to controvert); see Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 225 n.7 (1st Cir. 2003) (citing principle that "'[p]ro se status does not insulate a party from complying with procedural and substantive law'").

## FACTUAL BACKGROUND

In 2007, plaintiff applied for a position with the Postal Service. (Docket Entry # 27-1, p. 4). He was scheduled for an 804 driving test and advised to bring proof of his current car insurance in order to use his own vehicle during the test. (Docket Entry # 27-1, p. 4). On October 19, 2007, plaintiff took the 804 driving test with the Postal Service in a government vehicle because the driving instructor did not accept plaintiff's car registration as proof of his car insurance. (Docket Entry # 27, p. 2) (Docket Entry # 27-1, p. 3). As

plaintiff approached an intersection during the test, plaintiff admits that a traffic "light turned yellow when I was going passed [sic] the crosswalk and I proceeded through." (Docket Entry # 1-9, p. 2) (Docket Entry # 26-1, p. 31).  As set forth in a letter dated October 24, 2007, plaintiff was rated ineligible on the 804 driving test based on his driving skills. (Docket Entry 1-6, p. 3) (Docket Entry # 27-1, p. 7).  Plaintiff believed that he was deemed ineligible for not providing his insurance card which was unfair because, as pointed out in a letter plaintiff submitted after the test, a car registration is proof of insurance in Massachusetts.  (Docket Entry # 27-1, p. 5) (Docket Entry # 1-6, p. 2).  In a January 8, 2008 letter to plaintiff, Marian Varone ("Varone"), a human resources generalist principle with the Postal Service, assured plaintiff that he failed the 804 driving test due to his driving skills. (Docket Entry 1-6, p. 3).  The letter also explained that plaintiff could retake the test 180 days after the date of the last test.  (Docket Entry # 1-6, p. 3).

On March 6, 2008, plaintiff took and passed an 804 driving test and subsequently applied for a temporary city position.[2] (Docket Entry # 27-1, p. 24).  Plaintiff states that he was given the chance to take this 804 driving test if he agreed to

---

[2]   The 804 driving test eligibility rating is valid for two years after the examination date.  (Docket Entry # 1-10, p. 7).

drop "the charges on an EEO complaint he had at the end of 2007" for age discrimination.[3] (Docket Entry # 1, p. 1). After two months, plaintiff discovered that there were no available positions. (Docket Entry # 27-1, p. 24). Later that year, he applied and was preliminarily hired, or hired on a temporary basis, as a rural carrier associate at a post office in Duxbury, Massachusetts. (Docket Entry 27-1, p. 24). On October 27, 2008, he began five days of training in Providence, Rhode Island. (Docket Entry # 1, p. 2). An incident in a classroom occurred during the training and a few days later plaintiff failed a different "end of training" road test known as the 806 driving test. (Docket Entry # 1, p. 2). Plaintiff unsuccessfully sought relief for the failure and resulting termination by filing the aforementioned EEO complaint based on age discrimination in January 2009. (Docket Entry # 1, p. 2). These actions in 2008 provide the basis for the retaliation plaintiff maintains occurred when he failed the third 804 driving test on September 30, 2010. (Docket Entry # 1, p. 4). Before examining the 2008 activity and the alleged 2010 retaliation, it is necessary to explain the application, training and testing process.

A.   Application, Training and Testing Process

---

[3]   The only EEO complaint for age discrimination in the record is the one plaintiff filed in January 2009. (Docket Entry # 26-1, pp. 70-79).

In order to be eligible and hired for a city or rural associate carrier position with the Postal Service, an applicant must pass three tests.  (Docket Entry # 26-1, pp. 45-47) (Docket Entry # 1-13, pp. 29, 38 & 43).  The first test an applicant must pass is the 804 driving test.  (Docket Entry # 26-1, pp. 45-47).  Anyone hired to perform a function that requires a right hand drive ("RHD") vehicle must pass two tests in addition to passing the 804 driving test.  (Docket Entry # 26-1, p. 45).

A Postal Service handbook ("the handbook") describes the 804 driving test as:

> An initial road test that provides a practical, systematic way of measuring an individual's skills and ability to drive safely under normal operating conditions.  (Docket Entry # 1-13, p. 27).  The test is an important part of the selection process for Postal Service drivers.

(Docket Entry # 1-13, p. 27).  An applicant must pass this initial road test to be eligible for a specific vacancy and to be included on a hiring worksheet for future consideration.  (Docket Entry # 1-13, p. 29).  The route that is used during the test must provide exposure to traffic conditions that a rural carrier associate will likely encounter on the job.  (Docket Entry # 1-13, p. 30).  Information regarding the results of the road test is never disclosed to applicants or employees.  (Docket Entry # 1-13, p. 29).  This standard is in place to keep the test objective, fair and valid.  (Docket Entry # 1-13, p. 29).

Whenever possible, the test is administered by a driving safety instructor ("DSI").  (Docket Entry # 26-1, p. 28) (Docket Entry # 1-5, p. 1).  A road test examiner ("RSE") may also administer the 804 driving test but cannot score the test.  (Docket Entry # 1-5, p. 1) (Docket Entry # 1-13, p. 55).  The DSI marks an applicant's performance on a grid sheet or road test form and enters the test results into the OASIS computer program ("OASIS"), which is the Postal Service's computerized examination analysis program.  (Docket Entry # 26-1, pp. 35 & 58).  The DSI is unaware of the weight that OASIS ascribes to each specific part of the test.  (Docket Entry # 26-1, p. 4).  A second DSI then independently inputs the information contained on the grid sheet.  (Docket Entry # 26-1, p. 4).  The National Test Administration Center ("NTAC") then scores the examination sheets and retains these records for six months.  (Docket Entry # 26-1, p. 24).  NTAC converts the passing scores into ratings on a scale of 100.  (Docket Entry # 26-1, p. 24).  NTAC does not convert failing grades to numerical ratings, but rather gives them a rating of ineligible.  (Docket Entry # 26-1, p. 24).

A city or rural carrier applicant with the Postal Service must also pass a second test denoted as an end of classroom test ("the 805 classroom test").  (Docket Entry # 1-13, p. 38).  This is a classroom test given at the end of part one of the training session for driving positions and is designed to measure the

trainee's understanding of the subject matter presented in the classroom.  (Docket Entry # 1-13, p. 38).  As depicted in the handbook, part one of the classroom driver training consists of postal service "policy, rules, and requirements for safe and proper operation of a vehicle in the performance of duty." (Docket Entry # 1-13, p. 37).  The classroom training is also conducted by a DSI.  (Docket Entry # 1-13, p. 37).  If an applicant fails the 805 classroom test then the applicant is disqualified and is no longer eligible for a Postal Service position that requires driving.  (Docket Entry # 1-13, p. 38).

The final test consists of an end of training road test ("the 806 driving test").  The goal of this test is to measure a trainee's ability to apply the skills they have learned during the training.  (Docket Entry 1-13, p. 43).  As explained in the handbook:

> The DSI administers the end-of training road test using an LLV[4] after the individual completes controlled driving training.  If an individual completes controlled driving training for both an LLV and an FFV,[5] he or she will take only one end-of-training road test using an LLV.  FFV's will not be used for the end-of-training road test.  The test must be conducted on the street.

(Docket Entry # 1-13, p. 43).  An individual who fails the 806 driving test "will not be granted Postal Service privileges for

---

[4]  LLV is an acronym for a long life vehicle.  (Docket Entry # 1-13, p. 38).
[5]  FFV is an acronym for a flexible fuel vehicle.  (Docket Entry # 1-13, p. 38).

that type of vehicle."  (Docket Entry # 1-13, p. 44).

B.  Prior EEO Activity

The prior EEO activity concerns plaintiff's October 2008 conversation with DeSilva during classroom training and subsequent failure of the 806 driving test for the rural carrier associate position at the Duxbury post office in 2008.  (Docket Entry # 1, p. 4).  The classroom training took place in Providence and began on October 27, 2008.  (Docket Entry # 1, p. 2).

While in the classroom with a number of other trainees during a classroom break, plaintiff tried to console a fellow trainee, DeSilva,[6] after she failed her 805 classroom test. (Docket Entry # 1, pp. 2-3).  Plaintiff believed DeSilva was from Brazil and may have had trouble understanding English. (Docket Entry # 27-1, p. 24).  Plaintiff suggested to DeSilva that she leave the classroom and talk to Sharon Conca ("Conca") in the human resources office or Richard Sharer ("Sharer"), an EEO counselor.  (Docket Entry # 1, p. 3).  James R. Graves ("Graves"), a DSI instructor, was conducting the October 27, 2008 class.  (Docket Entry # 26-1, p. 34).  Plaintiff asked for Graves' opinion on the matter but Graves declined to give advice and left the room.  (Docket Entry # 26-1, p. 34) (Docket Entry #

---

[6]  Plaintiff and DeSilva were the only new employees in the class.  (Docket Entry # 1, p. 2).

1, p. 3).[7]   A few minutes later Lori Wagner ("Wagner"), a

manager, opened the classroom door and asked to speak with

plaintiff outside.   (Docket Entry # 1, p. 3).   Plaintiff asserts

that Wagner informed him not to give advice about matters that

did not concern him.[8]   (Docket Entry 1, p. 3).   Plaintiff

successfully passed the 805 classroom test and proceeded to the

third, end of training road test.   (Docket Entry # 26-1, p. 74).

On November 3, 2008, plaintiff took the 806 driving test.

(Docket Entry # 1, p. 2).   Plaintiff received three hours of

instruction and then took the test after lunch.   (Docket Entry #

27-1, p. 26).   Robert Andreozzi ("Andreozzi"), a DSI,

administered the test.   (Docket Entry # 1, p. 10) (Docket Entry

# 26-1, p. 55).   Plaintiff learned later that day that he was

rated ineligible for employment because of his performance on

the 806 driving test.   (Docket Entry # 1-9, p. 5).   Plaintiff

was then terminated from his rural carrier associate position.

(Docket Entry # 1, p. 2).

In January 2009, plaintiff filed the age discrimination

complaint with the EEOC.   (Docket Entry # 26-1, p. 70).

Plaintiff alleged that he failed the 806 driving test due to his

---

[7]   Graves avers that he asked the Human Resources Specialist to
assist with his attempt to begin instruction.   (Docket Entry #
26-1, p. 34).
[8]   Plaintiff's recitation of what Wagner said is hearsay if
offered for the truth of the matter asserted.   If offered to
show a retaliatory motive it is permissible and, as such,
considered.

age.  (Docket Entry # 26-1, p. 74).  In September 2009, the EEOC dismissed the complaint in a final agency decision.  (Docket Entry # 26-1, pp. 70-79).

Dissatisfied with the outcome, plaintiff filed a civil action in this district on November 30, 2009.  (Docket Entry # 26-1, pp. 45 & 52).  The district court dismissed the action and the First Circuit affirmed the dismissal on November 9, 2010. (Docket Entry # 1, p. 4).

C.  The Third 804 Driving Test

Two years later in 2010, plaintiff applied for a transitional letter carrier position with the Postal Service in South Yarmouth, Massachusetts.  (Docket Entry # 1-8, p. 7).  In order to be considered for this position, he had to pass the 804 driving test.[9]  (Docket Entry # 1-13, p. 29) (Docket Entry # 26-1, p. 45).  Graves, who identifies himself "[a]s the road test examiner," administered the 804 driving test to plaintiff on September 30, 2010.  (Docket Entry # 26-1, p. 35).  During the exam, plaintiff admits that, as he was approaching an intersection, the light turned yellow and, by the time he stopped the vehicle, he was over a stop line.  (Docket Entry # 1, p. 13) (Docket Entry # 1-9, p. 2).  He was not in the crosswalk and backed up the vehicle while the light was still

---

[9]  By this time, plaintiff's second 804 road test had expired as explained in footnote two.

yellow.  (Docket Entry # 1, p. 13) (Docket Entry # 26, ¶ 19) (Docket Entry # 1-9, p. 2) (Docket Entry # 26-1, p. 31).

After administering the test, Graves entered the information from the road test form in the OASIS program.[10] (Docket Entry # 26-1, pp. 35 & 58).  Andreozzi then independently entered the information from the form into the OASIS program.  (Docket Entry # 26-1, p. 58).  Later that day, the program scored the 804 driving test and rated plaintiff ineligible for employment with the Postal Service.  (Docket Entry # 26-1, p. 56).[11]

The day after plaintiff failed the 804 driving test, he telephoned Diane Gagne ("Gagne"), the acting manager of safety for the Postal Service.  (Docket Entry # 1, p. 9).  On October 15, 2010, plaintiff wrote a letter to Gagne addressing his concerns about the 2008 classroom incident, the failed 806 driving test in 2008 and the failed 804 driving test on

_____

[10]  The handbook provides that an RTE who administers the 804 driving test is not authorized to score the test.  (Docket Entry # 1-13, p. 55).  Even if Graves was an RTE and scored the test by entering the information into the OASIS program, there is no showing that the entries would have been different if performed by a DSI as required by the handbook.  Hence, there is no causal connection between this alleged discrepancy of not adhering to the handbook and plaintiff's failure of the 804 driving test.
[11]  Plaintiff states that neither Graves nor Andreozzi administered his 804 driving test on September 30, 2010, but rather it was administered by a third individual named Bob.  (Docket Entry # 1, pp. 9-10).  Plaintiff also posits that Graves was "the second DSI to validate my test scores."  (Docket Entry # 1, pp. 9-10).

September 30, 2010.  (Docket Entry # 1-9, pp. 1-2).  Plaintiff also addressed the fact that he had "a class B license with passenger endorsement" as well as "a CD license when" he was "employed with Frito Lay," Inc. in 2002.  (Docket Entry # 1-9, p. 1).[12]  Plaintiff did not receive a reply to the letter he sent to NTAC during this time period.  (Docket Entry # 1, p. 11).  Thereafter, plaintiff contacted various postal employees in Washington, D.C., Boston and Connecticut who informed him that the NTAC no longer existed.  (Docket Entry # 1, p. 12).

On October 28, 2010, plaintiff filed a formal EEO complaint based on retaliation.  (Docket Entry # 26-1, p. 2).  As protected activity, plaintiff cited only the 2008 classroom incident with Graves and Wagner.  (Docket Entry # 1-9, p. 1) (Docket Entry # 26-1, p. 30).  The EEOC Administrative Judge also identified the EEO age discrimination complaint filed in January 2009 as protected activity.  (Docket Entry # 26-1, p. 6).  On October 7, 2011, the EEOC Administrative Judge found in favor of the Postal Service and entered a judgment.  (Docket Entry # 26-1, pp. 9 & 13).

Three days later on October 10 2011, plaintiff applied for another position with the Postal Service also in South Yarmouth.

---

[12]   While with Frito Lay, Inc., plaintiff received a satisfactory mark on a road test he took on June 19, 2002, and also completed an Advanced Driving Traffic Safety Seminar on May 23, 2002. (Docket Entry # 1-9, pp. 4-5).

(Docket Entry # 1, p. 13).   Plaintiff received email
confirmation of this application on October 21, 2011 (Docket
Entry # 1-7, p. 1), but has not heard back as of January 20,
2012.   (Docket Entry # 1, p. 14).   Plaintiff filed this action
alleging retaliation on January 20, 2012.

## DISCUSSION

Defendant contends that the retaliation claim based on the
DeSilva conversation which purportedly led to the failures of
the 806 driving test and the third 804 driving test is subject
to summary judgment because plaintiff's alleged actions are not
EEO protected activities.   Furthermore, even if the activities
were protected, defendant argues that he had a valid, legitimate
and non-retaliatory reason for rating plaintiff ineligible on
the third 804 driving test.   Plaintiff also fails to establish
prima facie causation with respect to any retaliation
purportedly caused by the January 2009 filing of the EEO
complaint, according to defendant.   (Docket Entry # 26).

Title VII does not contain an express antiretaliation
provision applicable to the federal government as employer.
Morales-Vallenas v. Potter, 605 F.3d 27, 35-36 (1st Cir. 2010).
Previous courts, however, have assumed that the antiretaliation
provision applicable to private employers operates to prohibit
retaliation in the federal sector.   Id.   In order to show a
prima facie case of retaliation:

17

> The plaintiff must prove:  (1) he or she engaged in protected activity under Title VII, (2) he or she suffered an adverse employment action; and (3) the adverse employment action was causally connected to the protected activity.

Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 46 (1st Cir. 2010) (citing Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009)).  Once a plaintiff establishes a prima facie case of retaliation, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its employment decision."  Id.

I.  Prima Facie Showing of Protected Activity

In the case at bar, plaintiff alleges he was retaliated against because of his conversation with DeSilva regarding possible EEO activities.  (Docket Entry # 1, p. 4).  Defendant seeks summary judgment because plaintiff's conversation with DeSilva, including Grave's and Wagner's interactions with plaintiff, was not a protected activity.

The first element of a prima facie case of retaliation requires the plaintiff to establish "'participation in protected activity.'"  Fantini v. Salem State College, 557 F.3d at 32. Title VII's antiretaliation provision, 42 U.S.C. § 2000e-3(a), contains two clauses.  Crawford v. Metropolitan Government of Nashville and Davidson County, Tenn., 555 U.S. 271, 274 (2009). One clause closely ties itself to the filing of an EEO complaint or participation in EEO proceedings.  It makes "it 'an unlawful

employment practice for an employer to discriminate against any of his employees . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing'" under Title VII.  Id. (quoting 42 U.S.C. § 2000e-3(a)).  For example, the filing of the EEO age discrimination complaint on January 30, 2009, easily falls within the reach of this clause as protected activity.

The second clause, known as the opposition clause, is more germane to plaintiff's conversation with DeSilva.  It makes "it 'an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by'" Title VII. Id. (quoting 42 U.S.C. § 2000e-3(a)).  A prima facie showing under the opposition clause therefore entails showing that the plaintiff opposed the unlawful employment practice and that he had a "'good faith, reasonable belief that the underlying challenged actions of the employer violated the law.'"  Fantini v. Salem State College, 557 F.3d at 32 (quoting Manoharan v. Columbia Univ. College of Physicians & Surgeons, 842 F.2d 590, 593 (2nd Cir. 1988)); Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d at 46.  The opposition clause thus protects "informal protests of discriminatory employment practices, including making complaints to management, . . . and expressing support of co-workers who have filed formal charges."  Fantini v. Salem

State College, 557 F.3d at 46 (citing Sumner v. U.S. Postal
Serv., 899 F.2d 203 at 209 (2nd Cir. 1990)); see, e.g., Crawford,
555 U.S. at 276 (holding that an employee's response to
employer's questioning during internal company investigation
regarding rumors of sex discrimination constituted protected
activity).

Here, plaintiff was attempting to calm DeSilva after she
had been rated ineligible.  Plaintiff also advised her to speak
with Conca in the human resources office and Sharer, an EEO
counselor.  (Docket Entry # 1, p. 3).  Graves was in the room
while this conversation occurred and after plaintiff asked his
advice, he became angry, left the room and returned a short time
later with Wagner, who asked plaintiff to step outside.  (Docket
Entry # 1, p. 3).  Wagner then told plaintiff not to give
"advice to others in matters that did not concern" him.[13]
(Docket Entry # 1, p. 3) (Docket Entry # 1-10, p. 10) (Docket
Entry # 26-1, p. 31).

Examining whether these facts provide an adequate prima
facie showing of protected activity, there is no evidence that
DeSilva had filed a formal EEO complaint.  Cf. Sumner v. U.S.
Postal Serv., 899 F.2d at 209; see Fantini v. Salem State
College, 557 F.3d at 32 (quoting Sumner in parenthetical that
opposition clause protects informal activities of protest such

---

[13]  See fn. eight.

as "expressing support of co-workers who have filed formal
charges").   Unlike the facts at issue in Crawford, the defendant
employer, here the Postal Service, was not engaged in an
existing internal investigation of discrimination and the
DeSilva incident did not take place in the context of any such
internal investigation.   Rather, it is undisputed that the
activity took place in the context of a classroom for driving
instruction for Postal Service applicants or employees.
Plaintiff also admits that DeSilva returned to the classroom,
appeared pleased and stated she would be able to take the test
again.[14]   (Docket Entry # 27-1, p. 25).   Moreover, a "mild
incident" or "offhand comment" does not demonstrate a good
faith, reasonable belief that the underlying challenged actions
were unlawful.   Collazo v. Bristol-Myers Squibb Mfg., Inc., 617
F.3d at 48; see also Fantini v. Salem State College, 557 F.3d at
32 (plaintiff failed to establish good faith, reasonable belief
that coworker's failure to change general ledger system contrary
to law constituted an unlawful practice under Title VII).

Furthermore, plaintiff did not oppose or protest any
activity on the part of his employer, the Postal Service.   He
simply advised a fellow classroom attendee to talk to a woman in
human resources and also an EEO counselor in an effort to

---

[14]   This court does not consider plaintiff's recitation of what
DeSilva said for the truth of the matter asserted.   See fn.
eight.

console an individual who failed the 805 classroom test.  "The term 'oppose'" ordinarily means "'to resist or antagonize; to contend against; to confront; resist; withstand.'"  <u>Crawford</u>, 555 U.S. at 276 (quoting dictionary definition) (internal ellipses omitted).  In sum, plaintiff fails to make a prima facie showing that he opposed an unlawful employment and that he had a good faith, reasonable belief that the challenged conduct at issue by Graves and/or Wagner violated the law.  As such, plaintiff fails to establish a prima facie case of "protected activity" with respect to the 2008 classroom incident.

During oral argument, plaintiff pointed out that the conversation with DeSilva was just one of the alleged protected activities that he was being retaliated against.[15]  (Docket Entry # 31).  In 2009, plaintiff filed an EEO age discrimination complaint.  As previously noted, the filing of the 2009 EEO complaint falls easily in the category of a protected activity.  see <u>White v. New Hampshire Department of Corrections</u>, 221 F.3d 254, 262 (1st Cir. 2000) (finding that plaintiff engaged in protected activity by filing her EEO complaints); see <u>Hernandez-Torres v. Intercontinental Trading, Inc.</u>, 158 F.3d 43, 47 (1st Cir. 1998).

---

[15]  Any retaliation based on additional allegations of protected activity other than the 2009 filing of the EEO complaint (Docket Entry # 27, p. 2) are subject to dismissal under 28 U.S.C. § 1915(e)(2).

II.  Prima Facie Showing of Causation

Defendant argues that plaintiff fails to make a prima facie showing of causation with respect to both the 2008 classroom incident and the filing of the 2009 EEO complaint.  He therefore seeks summary judgment due to plaintiff's failure to satisfy the third element of a prima facie case of retaliation.

As previously noted, under the third element of a prima facie case of retaliation, a plaintiff must show that "the adverse employment action was causally connected to the protected activity."  Collazo v. Bristol-Meyers Squibb Manufacturing, Inc., 617 F.3d at 46.  A causal connection can be shown by a very close temporal proximity between the protected conduct and adverse employment action.  Clark County School District v. Breeden, 532 U.S. 268, 273-274 (2001); Sanchez-Rodriquez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 15 (1st Cir. 2012) ("[v]ery close temporal proximity between protected activity and an adverse employment action can satisfy a plaintiff's burden of showing causal connection") (internal quotation marks omitted); Collazo v. Bristol-Meyers Squibb Manufacturing, Inc., 617 F.3d at 49-50.

Turning to the causal connection with respect to the 2009 EEO complaint, there is no causal connection with the adverse action of plaintiff's failure of the 806 driving test in 2008.  "Causation moves forward, not backwards, and no protected

conduct after an adverse employment action can serve as the predicate for a retaliation claim." Pearson v. Massachusetts Bay Transportation Authority, 723 F. 3d 36, 42 (1st Cir. 2013). The failure of the 806 driving test preceded the purported retaliation for the filing of the EEO age discrimination complaint.

The September 30, 2010 failure of the third 804 driving test therefore constitutes the only viable adverse employment action with respect to the alleged retaliation for January 30, 2009 filing of the EEO complaint. The 20 month time period eviscerates any temporal connection between these two events. See Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d at 15 (three month time span between filing EEO complaint and employer's disciplinary action sufficient temporal proximity); Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (dicta noting that "three and four month periods have been held insufficient to establish a causal connection based on temporal proximity").

Plaintiff submits that a close temporal proximity is not necessary because defendant knew about the filing of the EEO complaint prior to the time he took the third 804 driving test. The record supports plaintiff's position inasmuch as Graves and Andreozzi acknowledge in their affidavits that they knew about this protected activity in the spring of 2009. (Docket Entry #

26-1, pp. 33 & 54).   Absent additional evidence to support a causal connection, their knowledge is not enough to satisfy the third element of a prima facie case.   "Knowledge alone cannot provide the causal link."   Pearson v. Massachusetts Bay Transp. Authority, 723 F. 3d at 42 (affirming district court's allowance of summary judgment in Title VII retaliation case based on third element of prima facie case).   "'Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint.'"   Id. (quoting Mesnick v. General Electric Co., 950 F.2d 816, 828 (1st Cir. 1991)).

Plaintiff's argument that "Bob" administered the third 804 driving test and might not be a DSI or that Graves identifies himself as an RTE in violation of provisions in the handbook is not materially germane to the causal connection between the January 2009 filing of the EEO complaint and the retaliation of rating plaintiff ineligible on the third 804 driving test.   The title and position of the individual conducting the road test or the individual entering the scores into the OASIS system does not evidence a causal connection.   The corresponding violation of the handbook likewise fails to support the required causal connection.   Plaintiff's argument that the handbook does not

25

refer to the OASIS system and that defendant did not produce evidence that it exists (Docket Entry # 27) is without merit. The summary judgment record establishes that the program exists and that the Postal Service uniformly restricts access to test scores.  (Docket Entry # 26-1, pp. 39 & 58-59).

Finally, seven other individuals besides plaintiff failed the 804 driving test during September and October of 2010. (Docket Entry # 26-1, p. 36).  Moreover, plaintiff admitted to a possible error while taking the test.  Accordingly, plaintiff fails to show the necessary causal connection of the third element of a prima facie case of retaliation with respect to the 2009 filing of the EEO age discrimination complaint and the adverse action of rating him ineligible in the third 804 driving test on September 30, 2010.

Defendant also argues that plaintiff fails to establish the necessary causal connection between the failure of the third 804 driving test and the September 2008 classroom incident, as an alternative basis to allow summary judgment.  Thus, assuming for purposes of argument that plaintiff establishes that the classroom incident is protected activity, plaintiff nevertheless fails to satisfy the third element of a prima facie case.  For reasons similar to the aforementioned reasons with respect to the 2009 filing of the EEO complaint, plaintiff's failure of the third 804 driving test was not causally connected to the 2008

classroom incident.   Indeed, the absence of temporal proximity is more pronounced with respect to the classroom incident which preceded the third 804 driving test by almost two years.

III.   <u>Legitimate, Non-Retaliatory Reason and Pretext</u>

As an alternative basis for summary judgment, defendant argues that it has a valid, legitimate reason for rating plaintiff ineligible on the third 804 driving test.   Plaintiff failed the test because he made an error by crossing over the stop line after the traffic light turned yellow.   Defendant further maintains that plaintiff fails to show that the reason was a pretext.

"Once a plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to demonstrate that there was a non-discriminatory reason for the adverse employment action."   <u>Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.</u>, 673 F.3d at 14-15; <u>Kelley v. Correctional Medical Services, Inc.</u>, 707 F.3d 108, 115 (1st Cir. 2013) (once the plaintiff makes prima facie showing, "the defendant 'must articulate a legitimate, non-retalitory reason for its employment decision'").   "If the employer demonstrates such a reason, the burden returns to the plaintiff to show that the non-discriminatory reason was merely a pretext for discrimination."   <u>Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc.</u>, 673 F.3d at 14.   Thus, if the defendant articulates

a legitimate reason and thereby "meets its burden of production, the burden shifts back to the plaintiff to show that the proffered legitimate reason is in fact a pretext and that the job action was the result of the defendant's retaliatory animus." Collazo v. Bristol-Myers Squibb Manufacturing, Inc., 617 F.3d at 46 (internal brackets omitted).

Here, defendant easily meets its burden to show a legitimate, non-retaliatory reason. Defendant failed the driving test because he committed a driving error during the road test. In particular, he crossed over the stop line after the traffic light turned yellow. Plaintiff admits that he crossed over the stop line although he notes he was not in the crosswalk and that he backed up the vehicle while the traffic light was still yellow. The error provides a legitimate, non-retaliatory reason for rating plaintiff ineligible on the test thereby satisfying defendant's burden on production. See Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d at 15 ("AT & T easily satisfies" its burden inasmuch as "Sanchez admits he was absent from work on Saturdays, and in turn AT & T disciplined him for his absenteeism").

Defendant is also correct that plaintiff cannot and does not show that the reason was pretextual. According to the declarations of Graves and Andreozzi, proper protocol was followed throughout the examination. (Docket Entry 26-1, pp.

28

41-42 & 58-59).  Graves marked plaintiff's performance on a road
test form and entered the results in OASIS.  (Docket Entry # 26-
1, p. 35).  Subsequent to this act, Andreozzi independently
input the grid sheet information on the road test form in OASIS.
(Docket Entry # 26-1, p. 4).  The computer program then rated
plaintiff ineligible.  (Docket Entry # 26-1, p. 3).  Again,
plaintiff also admits to crossing over the stop line while the
traffic light was yellow and then reversing back behind the line
while it was still yellow.  (Docket Entry # 27, p. 7).
Therefore, defendant followed proper protocol and undeniably had
a legitimate, non-retaliatory reason for marking plaintiff
ineligible.

Plaintiff's attempt to prove pretext by alleging that
neither Graves nor Andreozzi conducted the 804 driving test on
September 30, 2010, is unavailing.  (Docket Entry # 1, p. 9).
The assertion that the NTAC no longer exists, likewise does not
avoid summary judgment.  (Docket Entry # 1, p. 12).  In sum,
plaintiff fails to satisfy his burden on summary judgment to
show that defendant's reason was a pretext for retaliation.

IV.  Dismissal under 28 U.S.C. § 1951(e)

Although plaintiff mainly relies on the 2008 conversation
with DeSilva and the 2009 filing of the EEO age discrimination
complaint as the alleged protected activities, he is preceding
pro se.  Generously reading the complaint and the opposition to

summary judgment, he also identifies as a protected activity being asked "to drop[] the charges on an EEO complaint I had at the end of 2007" as a condition to take the second 804 driving test on March 6, 2008.[16]   (Docket Entry # 1, p. 1) (Docket Entry # 27, p. 2).   According to plaintiff, defendant retaliated against plaintiff for engaging in this protected activity by rating him ineligible on the 806 test on November 3, 2008, and the third 804 driving test on September 30, 2010.

Defendant does not move for summary judgment on the basis that the activity involving plaintiff being asked to drop the charges on a 2007 EEO complaint is not protected activity or is otherwise subject to dismissal.   Plaintiff is proceeding in forma pauperis (Docket Entry # 6) and the remaining part of the complaint that is not subject to defendant's summary judgment motion is subject to dismissal under 28 U.S.C. § 1951(e)(2) ("section 1915(e)(2)").

Section 1915(e)(2) allows for sua sponte dismissal when the complaint is frivolous or it fails to state a claim for relief. 28 U.S.C. § 1951(e)(2).   "In forma pauperis complaints may be dismissed sua sponte and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless."   Aldrich v.

---

[16]   Except for the first paragraph of the complaint, the record does not state that an official EEO complaint was filed in 2007.

Considine, 2013 WL 4679722, at *4 (D.Mass. Aug. 29, 2013).  The standard of dismissal is stringent.  "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).

Plaintiff's 2007 conduct consists of failing the 804 driving test ostensibly because he did not have adequate proof of car insurance.  Plaintiff investigated the matter and was informed that he failed the 804 driving test because of his driving skills.  (Docket Entry 1-6, p. 3) (Docket Entry # 27-1, pp. 3 & 6).

Assuming that plaintiff establishes that being asked to drop the purported 2007 EEO complaint is protected activity, see 42 U.S.C. § 2000e-3(a) (unlawful employment practice includes discriminating against employee or applicant "because he has made a charge, testifies, assisted or participated in any manner in an" EEOC investigation or proceeding); Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d at 14, plaintiff fails to satisfy the third element of a prima facie case, i.e., causation.  The adverse employment action, whether it consists of the failure of the 806 driving test in November 2008[17] or the

---

[17]  As stated in the complaint, plaintiff states he "had taken part in EEO activities back in 2007," defendant "had no intention of letting me complete the program" and defendant "waited until the last moment to fail me on a driving test

failure of the 804 driving test in September 2010, was not
causally connected to this protected activity in 2007 or early
2008.  Temporal proximity is absent and no other facts raise an
inference or sufficiently support such a causal connection.
There is also no evidence that Andreozzi knew of plaintiff's
previous activity with the Postal Service in 2007.  In addition,
there is no causal connection between these activities and the
2010 failure of the third 804 driving test for the same reasons
there is no causal connection between the 2009 EEO age
discrimination complaint and the 2010 failure of the third 804
driving test.

The record is also devoid of any retaliatory animus.  As
previously noted, plaintiff has the burden to show "'that the
job action was the result of the defendant's retaliatory
animus.'"  Collazo v. Bristol-Myers Squibb Manufacturing, Inc.,
617 F.3d at 46.  Plaintiff committed an error during both
driving tests.  Coupled with the passage of time between the
protected activity at issue, i.e., filing the 2007 EEO complaint
and being asked to drop the charges in and around that time
period, and the 806 driving test in November 2008 or the 804
driving test in late September 2010, there is no inference of a
retaliatory animus.

---

(806)" and terminated me on November 3, 2008.  (Docket Entry #
1, p. 2).

<u>CONCLUSION</u>

In accordance with the foregoing discussion defendant's motion for summary judgment (Docket Entry # 25) is **ALLOWED** and the remaining claims are subject to dismissal under 28 U.S.C. § 1951(e)(2).

            /s/ Marianne B. Bowler
           **MARIANNE B. BOWLER**
           United States Magistrate Judge